# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

BEVERLY JEFFRIES,

    *Plaintiff*,

*v*.                              CASE NO. 09-CV-12137

COMMISSIONER OF            DISTRICT JUDGE VICTORIA A. ROBERTS
SOCIAL SECURITY,            MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.    REPORT

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 15, 18.)

Plaintiff was 46 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 12 at 7, 13.) Plaintiff's relevant employment history includes work as a packer and sorter for an industrial laundry company and as a lunch aide for the Detroit Public Schools. (Tr. at 187.) Plaintiff last worked in 2006. (*Id.*)

Plaintiff filed the instant claim on October 23, 2006, alleging that she became unable to work on May 20, 2006. (Tr. at 149-53, 154-56.) The claim was denied at the initial administrative stages. (Tr. at 63-66, 67-70.) In denying Plaintiff's claims, the Defendant Commissioner considered necrotizing pancreatitis and diabetes mellitus as possible bases of disability. (*Id.*)

On April 29, 2008, Plaintiff appeared before Administrative Law Judge ("ALJ") Paul Armstrong. The hearing was continued so that a consultative examination could be performed, and on September 3, 2008, Plaintiff appeared with counsel before ALJ E. James Gildea, who considered the application for benefits *de novo*. (Tr. at 7-14.) In a decision dated December 2, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 14.) Plaintiff requested a review of this decision on May 7, 2007. (Tr. at 72-81.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 3, 2009, when the Appeals Council

denied Plaintiff's request for review. (Tr. at 1-3.) On March 13, 2009, Plaintiff filed the instant suit pro se seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse*

*v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

5

or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the

national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D. ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 20, 2006. (Tr. at 9.) At step two, the ALJ found that Plaintiff's diabetes mellitus, necrotizing pancreatitis, and arthritis were "severe" within the meaning of the second sequential step. (Tr. at 19-20.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 9-10.) At step four, the ALJ found that Plaintiff lacked the residual functional capacity to perform her past relevant work. (Tr. at 13.) At step five, the ALJ found that Plaintiff had the residual functional capacity to perform a limited range of sedentary work. (Tr. at 10-13.)

### E. Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was hospitalized in August 2006 and for nearly a week in September 2006 for severe pancreatitis and type 2 diabetes mellitus. (Tr. at 209-29.) She was admitted under the primary care of Charles E. Lucas, M.D. (*Id.*)

A chest x-ray taken on September 2, 2006, showed "pulmonary vascular congestion" and that the "residual airspace and effusions are improving from 08/22/06 study." (Tr. at 222.) Another chest x-ray taken on September 4, 2006, showed "some bilateral pleural effusions are redemonstrated with underlying airspace disease. Lung volumes are decreased. Mild pulmonary vascular congestion." (Tr. at 220.) A CT scan of the abdomen and pelvis taken on September 1,

2006, showed "interval increase in a now small to moderate-sized left pleural effusion," a "tiny right pleural effusion" and the surgical drain in the infragastric/peripancreatic region was noted but it only evidence of "small amount of fluid" was found. (Tr. at 224.)

A physical Residual Functional Capacity ("RFC") assessment conducted on January 22, 2007, concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and stand or walk for about 6 hours in an eight-hour workday with normal breaks; could sit for about 6 hours in an 8-hour workday with normal breaks; and was unlimited in her ability to push and/or pull. (Tr. at 231.) The assessment also concluded that Plaintiff would be occasionally limited in the postural area, e.g., kneeling, climbing, stooping, crouching, and crawling. (Tr. at 232.) There were no manipulative, visual, communicative or environmental limitations noted. (Tr. at 233-34.) Finally, the assessment noted that there was no treating or examining source statement for comparison. (Tr. at 236.)

A consultative examination was performed in May 2008, which noted that Plaintiff had headaches, blurred and double vision (despite surgery in 2005 for diabetic retinopathy), hypertension, no signs of angina or congestive heart failure or edema, that she had undergone gastrointestinal surgery twice in 2006 (pancreatic surgeries) and once in 2007 (splenectomy). (Tr. at 276-77.) The examination noted that Plaintiff's hypertension was "under fair to good control at the current time" and that Plaintiff's diabetes caused her to be "insulin dependent at the current time." Finally, it was noted that Plaintiff "has a history of arthritis and chronic back pain affected by her pancreatitis [and] abdominal pain as well as bone and joint pain." (Tr. at 278.)

The examining physician opined that Plaintiff is able to stand, bend, stoop, carry, push, pull, button clothes, tie shoes, dress, undress, dial a telephone, open a door, make a fist, pick up a coin, pick up a pencil, write, squat, arise from squatting, get on and off an examining table, climb stairs,

8

adiadockokinesis, finger to finger, finger to nose, and heel to shin. (Tr. at 282.) She also concluded that Plaintiff could walk on heels and toes and in tandem, and that her gait was stable and within normal limits, although she walked slowly and would benefit from a use of a cane whenever walking longer than 30 minutes to help her with balance and parathesias in her feet. (Tr. at 283, 285.) She also opined that Plaintiff could occasionally lift up to 20 pounds, occasionally carry up to 20 pounds, sit for 2 hours without interruption in a normal 6-hour workday, stand or walk without interruption for 30 minutes in a 6-hour normal workday. (Tr. at 284-85.) She stated that Plaintiff could occasionally climb stairs (but not ladders or scaffolds), and could occasionally stoop, kneel, crouch and crawl; she also stated that Plaintiff did not have any impairments that affected her vision or hearing, that she could tolerate moderate noise, that she could not tolerate heights, moving mechanical parts, or operating a motor vehicle, but that she could tolerate humidity, dust, odors, extreme temperatures and vibrations occasionally. (Tr. at 286-87.) Finally, the examining physician concluded that Plaintiff could perform activities like shopping, could travel without a companion, could walk a block at a reasonable pace, use public transportation, climb a few steps at a reasonable pace, care for her own personal hygiene, and could sort, handle and use paper or files. (Tr. at 288.)

Plaintiff testified at the second administrative hearing that she has pain and swelling of her feet and ankles and that, although walking helps reduce the swelling, she gets tired. (Tr. at 49.) She indicated that she does not have any problems with her knees. When asked whether a doctor had ever indicated that she has arthritis, she showed the ALJ a letter from a doctor. (Tr. at 50.) She also testified that she has shoulder pain, can't reach very far, that her doctor told her she has "kind of like arthritis" and that when she sees her doctor, she "tell[s] him and he just hike[s] up the pain medicine a little bit . . . ." (Tr. at 50-51.) Plaintiff stated that she has never fainted or blacked

9

out from low blood sugar but that she has "been real dizzy." (Tr. at 51.) Plaintiff also indicated that she uses a cane for balance and that she "can't open nothing" or "twist nothing" because "it's like arthritis." (Tr. at 53-55.)

The ALJ asked the Vocational Expert ("VE") to assume a person with Plaintiff's background, who was limited to lifting no more than 10 pounds occasionally, less than 10 pounds frequently, standing or walking up to 2 hours and sitting up to 6 hours with normal breaks, and who cannot climb ladders, ropes or scaffolds, nor do more than occasional climbing of ramps or stairs, nor do more than occasional balancing, stooping, kneeling, crouching and crawling. (Tr. at 57.) The VE testified that such a person could perform 4,300 bench assembler jobs, 1,800 order clerk jobs, and 1,400 system monitors and unskilled security personnel jobs available in the Michigan economy. (Tr. at 57.) He further testified that if she needed more than the normal breaks given during a workday, or if she was absent from the workforce for more than 10% of the time, she would likely lose her job. (Tr. at 57-58.) Finally, the VE testified that his information was consistent with the Dictionary of Occupational Titles ("DOT"). (Tr. at 58.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to undertake a limited range of sedentary work. (Tr. at 10-13.) Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting and carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a)(1991). Social Security Ruling 83-10 clarifies this definition:

> "Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

SSR 83-10.

After review of the record, I first suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

## 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff makes the following argument:

> The vocational expert said that if I was telling the truth about my fatigue, need to nap, and need to go to the bathroom 7-8 times a day, that there were absolutely no jobs that I could do. Even though I'm not quite dead yet, I am unable to do anything for 5 or 6 hours steadily, except sleep. The Judge has not considered these things or has totally ignored them.
>
> The Judge, in his decision, said that there was not enough medical evidence in the file. The hospital records are there, and the letters from my doctor is there, and the reports from the government doctors are there . . . . There is nobody who can say that what I have said about my condition is not true. So how can he not believe me? . . . If he really wanted better documentation, why didn't he send me to a doctor to get the test he wants? . . . He is no doctor. How dare him overruling all these doctors and then claiming he's just doing his job!

(Doc. 15 at 1-2.)

As indicated earlier, the "claimant bears the burden of proving [her] entitlement to benefits"; thus, it is the claimant's duty to come forward with medical evidence proving disability. *Boye, supra.* After review of this record, I suggest that the overwhelming majority of medical evidence supports the ALJ's decision, including the consultative and examining physician's determinations. The only medical evidence evidencing disability is a Michigan Department of Human Services form with boxes checked by Plaintiff's treating physician, Edward C. Abellana, M.D., in which he concluded that Plaintiff could not perform any work. (Tr. at 239-40.) However, Dr. Abellana proffered no explanations as to why any underlying condition was disabling. (*Id.*)

The opinion of a treating physician is to be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). In the instant case, the ALJ properly rejected the opinion of Dr. Abellana because it was not supported by any explanation, let alone acceptable diagnostic techniques, and because it was inconsistent with other evidence of record.

The ALJ also found that Plaintiff's complaints of disabling pain were not fully credible. Social Security Regulations prescribe a two-step process for evaluating subjective complaints of pain. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition or (2) the objectively-determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then

evaluates the intensity and persistence of the plaintiff's symptoms. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70. In evaluating the intensity and persistence of subjective symptoms, the ALJ considers objective medical evidence and other information, such as what may precipitate or aggravate the plaintiff's symptoms, what medications, treatments, or other methods plaintiff uses to alleviate her symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. *Id.*

The issue is whether the ALJ's credibility determinations are supported by substantial evidence. An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters*, 127 F.3d at 531. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir. 1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility"); *Krupa v. Comm'r of Soc. Sec.*, No. 98-3070, 1999 WL 98645 at *3 (6th Cir. Feb. 11, 1999) (unpublished).

After examining the record evidence, I suggest that substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding the level of pain was not fully credible. Although the evidence showed that Plaintiff does have diabetes mellitus, pancreatitis, and hypertension, there is no evidence that those conditions are disabling. The examining physician found that Plaintiff's hypertension was "under fair to good control at the current time" and she was managing her diabetes with insulin. (Tr. at 278.) The same physician found Plaintiff able to do more than the limited range of sedentary work described in the hypothetical. (Tr. at 282-88.) I therefore suggest that the ALJ's decision is supported by substantial evidence.

The ALJ's findings also follow the opinions of the vocational expert which came in response to detailed and proper hypothetical questions that accurately portrayed plaintiff's individual impairments in harmony with the relevant objective record medical evidence. *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

After review of the relevant record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail

with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                        s/ *Charles E. Binder*
                                                        CHARLES E. BINDER
Dated: February 17, 2010                                      United States Magistrate Judge

### **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and was served on the following non-ECF participant via the United States Postal Service: Beverly Jeffries, 9127 Crane, Detroit, MI 48213.

Date: February 17, 2010                                           By    s/Patricia T. Morris
                                                                                             Law Clerk to Magistrate Judge Binder